**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

|  |  |
|---|---|
| SPRINT SOLUTIONS, INC.,<br>and SPRINT COMMUNICATIONS<br>COMPANY L.P.,<br><br>            Plaintiffs,<br><br>    v.<br><br>HUAZHI HAN a/k/a ERIC HAN d/b/a<br>HAN'S ELECTORNICS,<br><br>            Defendant. | Case No. 1:14cv2438<br><br>**COMPLAINT FOR DAMAGES AND<br>INJUNCTIVE RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P. (collectively "Sprint" or "Plaintiffs"), hereby file this Complaint for Damages and Injunctive Relief against Defendant Huazhi Han a/k/a Eric Han d/b/a Han's Electronics ("Defendant" or "Han"), and state:

### INTRODUCTION

1.　　Sprint sells wireless handsets ("Sprint Phones" or "Phones") under the brands Sprint, Boost Mobile, Virgin Mobile, payLo, and Assurance Wireless for use on Sprint's wireless network at prices significantly below the wholesale price of the Phones to make them more widely accessible to consumers. Defendant and his co-conspirators are perpetrators of an unlawful scheme (the "Bulk Handset Trafficking Scheme" or the "Scheme") to profit by stealing the subsidies that Sprint invests in Sprint Phones.

2.　　Defendant and his co-conspirators acquire the subsidized Sprint Phones through various methods, including the use of "runners" and "credit mules." As part of the Bulk Handset

1

Trafficking Scheme, the Phones may be purchased and sold multiple times, and ultimately end up in the hands of someone other than the consumer whom Sprint intended to benefit through its subsidy. Along the way, the Phones are "unlocked" so they will operate on a wireless network other than Sprint's. Often the ultimate user of the phone is located overseas, in a country where the wireless service provider does not subsidize phones.

3.      Defendant's Scheme takes advantage of the fact that while Sprint subsidizes Phones to benefit consumers, wireless service providers in other countries do not. By obtaining the Sprint Phones under false or fraudulent pretenses from Sprint and diverting them to other markets where phones are not subsidized, the Scheme converts Sprint's subsidies into profits for Defendant and his co-conspirators. Although Defendant may participate in less than all of the steps in the process of diverting Sprint Phones, each of Defendant's acts is a violation of Sprint's rights and causes significant damage to Sprint. Additionally, as a participant in the conspiracy, Defendant is liable for the harm caused to Sprint by the entire Scheme.

4.      The Scheme causes tremendous harm to Sprint and to consumers. In addition to the pecuniary losses caused by Defendant's theft of Sprint's subsidy investment, lost sales and market expenses, and lost expected customer revenue, Defendant's misconduct has harmed Sprint's relationships with its customers, dealers, retailers, and others. Defendant's Scheme also involves unlawfully accessing Sprint's protected computer systems and wireless network; trafficking of Sprint's protected and confidential computer passwords; willful infringement of Sprint's trademarks; and/or stealing legitimate customer upgrades. Defendant has caused substantial damage to Sprint's brand, image, and reputation.

5.      Sprint seeks to recover damages for the harm caused by Defendant's Bulk Handset Trafficking Scheme, and to obtain an injunction prohibiting Defendant from continuing to perpetrate the Scheme.

6.      All conditions precedent to filing this action have been performed, waived or excused.

7.      Sprint has retained the undersigned attorneys to represent it in this action and has agreed to pay its attorneys a reasonable fee for their services.

## PARTIES, JURISDICTION, AND VENUE

8.      This is an action for damages in excess of $75,000.00, exclusive of interest, costs, and attorneys' fees.

9.      Sprint Solutions, Inc. is a Delaware corporation, with its principal place of business in Reston, Virginia.

10.     Sprint Communications Company L.P. is a Delaware limited partnership. All of its limited partners are corporations. None of those corporations is incorporated in or has its principal place of business in Illinois.

11.     Defendant Huazhi Han a/k/a Eric Han d/b/a Han's Electronics ("Han") is an individual and a resident of Summit, Illinois. Upon information and belief, he resides at 7416 West 61st Place, Summit, Illinois 60501. Upon information and belief, he personally engaged in, and helped facilitate, the improper conduct described herein.

12.     Jurisdiction in this Court is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1338 because Sprint's claims for violation of the United States Trademark Act, Title 15 of the United States Code and the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. arise under federal law and because diversity exists between the parties and the amount in controversy

exceeds $75,000.00 exclusive of costs, fees, and interest. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Sprint's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

13.     Defendant Han is subject to the personal jurisdiction of this Court because he is a resident of Summit, Illinois.

14.     Defendant is further subject to the personal jurisdiction of this Court because he has conducted, engaged in and carried out business ventures within the State of Illinois; he has committed tortious acts within the State of Illinois; and he has engaged in substantial and not isolated activity within the State of Illinois.

15.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because the Defendant either resides in this district or a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### SPRINT'S BUSINESS MODEL

16.     Sprint and its affiliates offer a comprehensive range of wireless and wireline communications services to consumers, businesses, and government users. Sprint currently serves more than 56 million customers nationwide, and is widely recognized for developing, engineering and deploying innovative technologies. The Sprint companies and affiliates highly value the outstanding business reputation they have worked hard to develop.

17.     Sprint's wireless program enables Sprint customers to choose from a variety of monthly voice and data plans for use on cutting edge devices on the Sprint wireless network. In addition to being available through Sprint online and in its stores, Sprint Phones and wireless service are sold through authorized Sprint dealers and retailers, with whom Sprint has contractual relationships, around the country.

18.     Sprint's business model is based upon Sprint's ability to deliver affordable, innovative, and desirable products and services to consumers.  Therefore, Sprint subsidizes its customers' acquisition of the Sprint Phones by selling its Phones for substantially less than the wholesale prices Sprint pays for the Phones from the manufacturers of the Phones.  Sprint recoups this subsidy through revenue earned on the sale of Sprint service, which customers must use to transmit and receive voice, text, and data on the Sprint Phones.

19.     Sprint is able to offer its Phones to customers at reduced prices only if the Phones are used as intended on the Sprint wireless network.  Manufacturers that produce wireless phones for Sprint install proprietary software, requested and paid for by Sprint, into the Sprint Phones. Among other things, this software is intended to prevent the Phones from being used outside the Sprint network.

20.     Because the Bulk Handset Trafficking Scheme requires the trafficked Sprint Phones to operate on a network other than Sprint's, Defendant or his co-conspirators must remove or alter this software using a process called "unlocking."  Federal regulators recently revoked an exemption to the Digital Millennium Copyright Act, 17 U.S.C. § 1201, *et seq.*, ("DMCA") for wireless phone unlocking, paving the way for unlockers to be criminally prosecuted under the DMCA, based upon the explanation that:

> the practice of locking cell phones is an essential part of the wireless industry's predominant business model, which involves subsidizing the cost of wireless handsets in exchange for a commitment from the customer that the phone will be used on that carrier's service so that the subsidy can eventually be recouped by the carrier. CTIA alleged that the industry has been plagued by ''large scale phone trafficking operations'' that buy large quantities of pre-paid phones, unlock them, and resell them in foreign markets where carriers do not subsidize handsets.

*Exemption to Prohibition on Circumvention of Copyright Protection Systems for Access Control Technologies*, 77 Fed. Reg. 65260, 65265 (Oct. 26, 2012) (amending 37 C.F.R. §

5

201.40). Like all wireless carriers in the United States, Sprint has policies in place to unlock Phones for legitimate customers in certain circumstances, in order to allow the customers to continue to use their Sprint Phone for international travel or if they port their service to another carrier with compatible technology. *See* 47 U.S.C. § 251(b)(2).

21. Wireless technology is constantly changing and improving, and the wireless industry is intensely competitive. Sprint expends substantial resources to maintain its position as an industry leader and to ensure that its network, handsets, and all of its products and services are at the cutting edge of the latest technological developments. Providing its customers with the highest quality and most advanced technology is a key differentiator for Sprint and central to its business strategy. For example, Sprint was the first national wireless carrier in the United States to offer 4G service, and Sprint continues to aggressively develop, engineer, and deploy innovative technologies to benefit its customers.

22. Sprint invests heavily in efforts to provide its customers with the most up-to-date wireless handsets, and subsidizes most or all of the cost of purchasing a new phone for its customers. Sprint makes subsidized phones available to new customers when they initiate wireless service, and also provides new subsidized phones to existing customers at regular intervals. According to its public securities filings, Sprint spent more than $6.6 billion on handset subsidies in 2012, and invested an additional $2 billion in subsidies in the first quarter of 2013. It is those funds that Defendant and his co-conspirators steal through their Bulk Handset Trafficking Scheme.

23. Sprint made a particularly significant and widely publicized investment for its customers in the smartphone market. As reported in The Wall Street Journal, Sprint agreed to buy 30.5 million iPhones from Apple over four years, at a cost of more than $20 billion. Indeed,

Sprint has staked a significant amount of its business on the iPhone brand. Copies of newspaper articles discussing Sprint and the iPhone are attached hereto as **Composite Exhibit A**. Sprint's subsidized iPhones are a particularly attractive and lucrative target for Defendant and his co-conspirators' Bulk Handset Trafficking Scheme.

24.     Sprint is continuously working to provide its customers with the latest in communications technology. For example, Sprint recently implemented a massive "Network Vision" program to migrate millions of customers from the Nextel network, which used outdated iDEN technology, and to upgrade more than 25,000 wireless transmission facilities around the country to the latest 4G LTE transmission technology. Sprint's practice of subsidizing handsets for existing customers is an essential part of its business model, and facilitates the upgrading of Sprint's network by helping to migrate customers from older technology phones to newer models. Many of the various wireless transmission standards are not compatible with each other, so Sprint's customers need to switch to new phones before Sprint can transition its network to the latest standard. New handsets are also needed to utilize different radio frequencies and take advantage of Sprint's acquisition of wireless spectrum from various other companies.

25.     By stealing the subsidies in handset upgrades that Sprint intends to benefit its customers, Defendant's Scheme harms Sprint not only by misappropriating its subsidy investment, but also by impeding Sprint's ability to upgrade its equipment and network facilities. Sprint offers subsidized Phone upgrades to its customers every 12 to 24 months to meet their high expectations and strong demand for the most technologically-advanced handsets, features, and services. These upgrades are critical to Sprint's network speed and efficiency.

**SPRINT'S TRADEMARK RIGHTS**

26.     Sprint Communications Company L.P. owns federal trademark registrations for the standard character and stylized Sprint® marks (collectively, the "Sprint Communications Marks").   Sprint Solutions, Inc. has been assigned the right to use and enforce the Sprint Communications Marks.   Copies of the certificates of registration issued by the United States Patent and Trademark Office are attached hereto as **Composite Exhibit B**.  The stylized Sprint Communications Marks are depicted below:

 

27.     Sprint has been assigned the right to use and enforce the standard character and stylized Virgin Mobile, payLo, Assurance Wireless and Boost Mobile trademarks (collectively, the "Assigned Marks"), the latter of which are depicted below:

   

The Sprint Communication Marks and Assigned Marks will collectively be referred to as the "Sprint Marks".

28.     Sprint uses the Sprint Marks on and in connection with its telecommunications products and services.

29.     As a result of the high quality of Sprint's products, services, sales, promotion and advertising thereof, the Sprint Marks have become an intrinsic and essential part of the valuable goodwill and property of Sprint.   The Sprint Marks are well established and well known to customers and the trade as symbols identifying and distinguishing Sprint's products and services,

signifying distinctive products and services of high quality, and providing actual notice that the Phones are intended for use solely within Sprint's wireless system. Only Sprint and its authorized, affiliated agents are permitted to use the Sprint Marks. The Sprint Marks are valid, distinctive, protectable, famous, have acquired secondary meaning, and are associated exclusively with Sprint.

## TERMS AND CONDITIONS REGARDING
## THE USE OF SPRINT PHONES

30.     Sprint Phones are sold subject to terms and conditions ("Terms and Conditions") which conspicuously restrict and limit the sale and use of the Phones. A copy of the Terms and Conditions is attached hereto as **Exhibit C**. These Terms and Conditions are set forth in printed inserts that are included with the purchase of every Sprint Phone.

31.     To make its customers' experience as convenient as possible, Sprint provides various methods for its customers to manifest their agreement to the Terms and Conditions, depending on the type of service they obtain and the method and sales channel through which they activate their service. In some cases, customers are asked to sign a written contract, in others they acknowledge their agreement orally by phone, and in other situations they may indicate their agreement by clicking the appropriate buttons on a website. In the case of pay-as-you-go or prepaid service, customers sometimes indicate their agreement by purchasing a Phone in a package that conspicuously indicates that their purchase or use of the phone constitutes their agreement to the Terms and Conditions. All of the methods used by Sprint for obtaining its customers' agreement to the Terms and Conditions are legally valid and appropriate, and the Terms and Conditions constitute a valid and binding contract between Sprint and each of its customers.

32.     The Terms and Conditions set forth certain rights and restrictions on the use of Sprint Phones.  Among other things, the Terms and Conditions: (a) require that the customer pay applicable monthly service charges and other related fees; (b) require the customer to pay an Early Termination Fee ("ETF") for each line of service that is terminated before the contract term is concluded; (c) indicate that the Phone is designed to be activated on the Sprint CDMA network; (d) prohibit resale of Sprint Phones and related products and services; and (e) prohibit using the Phones for a purpose that could damage or adversely affect Sprint.

## DEFENDANT'S MISCONDUCT

33.     Sprint has discovered that, although large quantities of its Phones are being purchased throughout the United States, a significant number of these Phones are not being used on the Sprint network.

34.     Instead, entities and individuals such as Defendant and his co-conspirators, with no intention of lawfully connecting to or using the Sprint wireless network, are fraudulently purchasing and reselling Sprint Phones in bulk quantities.  The Phones are purchased, either directly by Defendant or through his co-conspirators, and then sold for a substantial profit and shipped overseas, where they can be used on other wireless carriers' networks, or shipped to other domestic traffickers, who often add them to larger shipments headed overseas.  The Phones are usually taken out of their original packaging, and all accessories, warranties, and manuals are removed, before being shipped overseas.  The Phones, once identified as connected with fraud or theft, are no longer useable on the Sprint network.  On information and belief, unlocked by Defendant or his co-conspirators, to raise their value and prepare them for use on foreign carriers. Defendant undertakes these actions for profit.

35.     Once a Sprint Phone is unlocked and shipped overseas to be used on other wireless networks, Sprint no longer has a revenue source to recoup its investment on that Phone.

36.     Defendant is knowingly and willfully engaged in an enterprise that traffics in and resells Sprint Phones.  Defendant has purchased and sold large quantities of Sprint Phones through various co-conspirators.  While the complete extent of Defendant's activities in the Bulk Handset Trafficking Scheme is not yet known, Defendant is actively involved in several integral components of the conspiracy.

37.     Defendant is not an authorized Sprint dealer or retailer.

38.     Defendant operated his cell phone business under the name "Han's Electronics" from about 2011 through 2012, in the Chicago area.  Defendant primarily bought and sold new carrier handsets, including new Sprint Phones.

39.     Defendant purchased new carrier phones over the internet and from individuals on the street for less than what the same phones would cost in retail stores.  Defendant then resold the new carrier phones overseas, including Hong Kong and to individuals advertising to purchase them via internet marketplaces including, Craig's List, eBay and TaoBao (a Chinese auction site).

40.     One of Defendant's co-conspirators, Ace Wholesale, Inc. ("Ace Wholesale") is also a known participant in the Bulk Handset Trafficking Scheme.  Ace Wholesale sold Defendant at least 1577 new Sprint Phones, which Ace Wholesale shipped to Defendant at 404 East Hill Street, Champaign, Illinois.  Copies of invoices memorializing sales from Ace Wholesale to Defendant are annexed hereto as **Composite Exhibit D**.  The shipping address, 404 East Hill Street is a property Defendant owns and where he resided at the time of the transactions.

41.     At the time Ace Wholesale was raided by law enforcement in August 2012, Defendant asserts he had paid Ace Wholesale approximately $25,000 to purchase additional handsets, but as Ace Wholesale's inventory was seized, Defendant claims he never received the phones nor did Ace Wholesale refund his money.

42.     Upon information and belief, Defendant has illegally trafficked thousands of new carrier phones, including new Sprint Phones, all of which were resold and/or shipped overseas for profit.

## SUBSTANTIAL HARM CAUSED BY DEFENDANT'S MISCONDUCT

43.     Defendant's actions substantially harm Sprint in several ways, including *inter alia*: (1) Sprint is deprived of the opportunity to recoup its subsidies on the sale of its Sprint Phones; (2) Sprint is deprived of the opportunity to earn profits by providing wireless service to legitimate Sprint consumers; (3) Sprint is hampered in its ability to migrate its customers from older to newer technology through legitimate timely upgrades, which negatively impacts the efficiency of Sprint's wireless network speed; (4) Sprint's brand, image and reputation are harmed by the inability to timely remove old Phone models from circulation through legitimate upgrades; and (5) Defendant's infringement of the Sprint Marks causes significant ongoing and irreparable losses and harm to Sprint's brand, image, and reputation.  All of these factors may contribute to Sprint's loss of competitive edge in the cellular phone industry.

44.     The conduct of Defendant, his unknown co-conspirators, and others who engage in the unlawful bulk purchasing and sale of Sprint Phones has also resulted in shortages of available Sprint Phones.  This misconduct substantially harms Sprint and its relationship with dealers, retailers and consumers because Sprint is not able to supply sufficient handsets to satisfy the demand from legitimate consumers who, as a result, go elsewhere for their

telecommunications services. This is particularly true in the case of the popular iPhones and Samsung Galaxy models.

45. Sprint suffers additional, irreparable harm when its Phones are removed from the original packaging and altered because Sprint is deprived of the means to control the quality of its product. This becomes particularly damaging where a potential legitimate Sprint customer acquires a Phone from Defendant that the customer believes is a genuine Sprint Phone, with all of the attendant benefits and is later disappointed in Sprint because the Phone does not work as intended on the Sprint network. Moreover, the process of unlocking and reselling a Sprint Phone voids the manufacturer's warranty on the device. The unlocked repackaged Sprint Phones are usually resold by Defendant or his co-conspirators without the original manufacturer's warranty documentation. Both consumers and Sprint are harmed when a Sprint Phone that has been altered or sold by Defendant or his co-conspirators is submitted for warranty repair. Consumers who purchase Sprint Phones from Defendant or his co-conspirators are unable to obtain warranty service in the event they experience problems with their Phones. As a result, Sprint's reputation suffers further.

46. Additionally, confused customers, relying on the Sprint Marks on the Phones they purchased from Defendant, look to Sprint to resolve their questions and issues. Sprint incurs substantial costs associated with calls to its customer relations department. Sprint's reputation is further damaged by its inability to assist those consumers because despite bearing the Sprint Marks, it is no longer a Sprint Phone and Defendant's actions voided the warranties.

47. Defendant's conduct has resulted in the dilution of the Sprint Marks; substantial harm to Sprint's business reputation and goodwill; a greater likelihood of confusion, mistake,

and deception as to the source of origin of Sprint products unlawfully sold by the Defendant and confusion as to what if any relationship exists between Sprint and Defendant.

48.     On information and belief, Defendant's and his co-conspirators are also engaging in various schemes that usurp legitimate customer upgrades by, *inter alia*, fraudulently requesting subsidized handset upgrades on legitimate Sprint customer accounts and retaining the new devices while the consumers are left with an outdated device.   Defendant's practice of stealing upgrade Phones misappropriates the subsidy intended for the customer and hinders Sprint's objective of regularly migrating customers to newer devices that work more effectively on Sprint's updated networks.   This migration cannot occur when older devices remain in consumer circulation longer than intended. Defendant's conduct causes harm to Sprint's reputation with its customers, whose devices no longer work as effectively on Sprint's network and other customers, who were defrauded out of their subsidized Phone upgrade, no longer have the ability to upgrade their phone if it breaks, and may blame Sprint and leave for another service provider.

## CIVIL LITIGATION AGAINST OTHER PHONE TRAFFICKERS

49.     Federal courts have recognized that conduct similar to Defendant's conduct is unlawful.

50.     In addition to Sprint, T-Mobile USA, Inc. ("T-Mobile"), TracFone Wireless, Inc. ("TracFone"), Nokia Corporation ("Nokia"), and AT&T Mobility LLC ("AT&T") have each filed multiple lawsuits in numerous federal courts across the country against other defendant similarly engaged in the practice of defrauding legitimate consumers by bulk purchasing wireless telephones and reselling them for profit.   Each of those companies has succeeded in obtaining Final Judgments and Permanent Injunctions against phone traffickers in those cases.   Copies of

14

several examples of Final Judgments and Permanent Injunctions are attached hereto as **Composite Exhibit E**. A defendant in one case who continued trafficking in phones in violation of an injunction issued by the U.S. District Court for the Southern District of Texas was charged with criminal contempt of court and sentenced to serve 57 months in prison. Copies of the Memorandum Opinion and Order of Contempt, Application for Criminal Contempt, the Order finding cause to believe the defendant is guilty of criminal contempt, and Judgment of Criminal Contempt are attached hereto as **Composite Exhibit F**.

## CRIMINAL INVESTIGATION AND PROSECUTION
## OF OTHER PHONE TRAFFICKERS

51.  Phone traffickers like Defendant have been the subject of numerous criminal investigations and prosecutions across the country. Some recent examples are:

a.  In March, 2013 the California Attorney General charged two individuals with trafficking nearly $4M in wireless phones to Hong Kong over an 8 month period.

b.  On August 21, 2012, federal Homeland Security agents and SWAT teams conducted a raid on facilities operated by handset trafficker Ace Wholesale and on the home of the company's CEO, Jason Floarea. Later the same day, Sprint filed suit in federal court against Ace Wholesale, Floarea, and several affiliated entities and persons asserting handset trafficking claims similar to those asserted here.

c.  On or about February 25, 2013, federal law enforcement authorities, including agents from the Federal Bureau of Investigation, the United States Secret Service, and the Bureau of Alcohol, Tobacco, Firearms and Explosives, raided a warehouse belonging to a phone trafficking company called Wireless Buybacks in Elkridge, Maryland, pursuant to a search warrant and found the facilities were

being used to harbor stolen Sprint Phones. Sprint filed suit against Wireless Buybacks and its affiliates the following day.

d.  An FBI sting operation in Philadelphia that began with wireless phone trafficking resulted in the conviction of 16 individuals on terrorism charges, when it turned out that the proceeds from their phone trafficking and other illegal conduct was being funneled to the terrorist organization Hezbollah.

Copies of court documents, press releases, and news reports regarding these incidents are attached hereto as **Composite Exhibit G.**

<u>**COUNT ONE**</u>

**UNFAIR COMPETITION**

52.  Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

53.  Defendant's conduct in purchasing and/or inducing others to purchase the Phones, disabling or unlocking, inducing others to disable or unlock, and/or assisting others to disable or unlock the Phones, and reselling and/or assisting others to resell the Phones as new for activation on other wireless networks constitutes unfair competition under the common law of the State of Illinois.

54.  Defendant's conduct in selling, inducing others to sell, and/or assisting others to sell unlocked Sprint Phones for the purpose of being resold, which undermines Sprint's subsidy program, constitutes unfair competition under the common law of the State of Illinois.

55.  Defendant's use of at least one of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's counterfeit products and services, and the relationship between Sprint and Defendant. Thus, Defendant has also engaged

in unfair competition with Sprint in violation of the common law of Illinois by selling and/or offering, and promoting their products with the intention of trading upon the goodwill established by Sprint and are thereby misappropriating the benefits of substantial effort and money expended by Sprint in establishing its rights in and to the Sprint Marks.

56.     Defendant's actions were done in bad faith; they were intentional, malicious, and willful, and have caused substantial harm to Sprint.

57.     Sprint is entitled to appropriate relief as prayed for hereinafter, including injunctive relief.

**COUNT TWO**

**TORTIOUS INTERFERENCE WITH BUSINESS
RELATIONSHIPS AND PROSPECTIVE ADVANTAGE**

58.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

59.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized dealers of Sprint Phones.

60.     A business relationship, and an expectancy of business relationships, exists between Sprint and authorized retailers of Sprint Phones.

61.     A business relationship, and an expectancy of business relationships, exists between Sprint and the purchasers and prospective purchasers of its Sprint Phones and wireless service.

62.     There is a high probability of future economic benefit to Sprint as a result of these current and prospective business relationships.

63.     Defendant has knowledge of and has intentionally and unjustifiably interfered with, and/or has knowingly facilitated a conspiracy to interfere with, these current and

prospective business relationships between Sprint, authorized dealers and retailers who sell Sprint products, and legitimate Sprint customers or prospective customers.

64.     Specifically, but without limitation, Defendant knew that Sprint has business relationships, and an expectancy of business relationships, with legitimate consumers of Sprint Phones and wireless service.  Defendant interfered with these relationships by engaging in their Bulk Handset Trafficking Scheme and causing, at least in part, Sprint to have an insufficient supply of Sprint Phones available to meet legitimate consumer demand.  Defendant also interfered with the contractual relationships that existed between Sprint and Runners or other purchasers by inducing the Runners or other purchasers to breach their contracts with Sprint.

65.     Defendant also knew that Sprint has business relationships with authorized dealers and retailers of Sprint Phones to provide said dealers with sufficient quantities of Sprint Phones for their legitimate consumers' use exclusively on Sprint's wireless network. Defendant's Bulk Handset Trafficking Scheme has resulted in substantial numbers of Sprint Phones that are never activated on Sprint service and has further caused shortages of available Sprint Phones, thereby substantially harming Sprint and its relationship with its authorized dealers and retailers because Sprint is unable to supply dealers with sufficient Phones to satisfy the demands from legitimate consumers.

66.     Defendant is intentionally interfering with Sprint's business relationships and prospective advantages through improper means and in violation of the law.

67.     Defendant engaged in the acts of interference set forth herein with a conscious desire to prevent the relationships from occurring or continuing, or Defendant knew that the interference was certain or substantially certain to occur as a result of their conduct.

68.     Sprint has been proximately damaged and continues to be damaged as a result of Defendant's interference.

69.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's tortious interference.

## COUNT THREE

### CIVIL CONSPIRACY

70.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

71.     An agreement and conspiracy existed and continues to exist between and among the Defendant and other co-conspirators to unlawfully bulk purchase, traffic, and resell unlawfully unlocked and altered Sprint Phones under at least one of the Sprint Marks, which results in federal common law and statutory trademark infringement, common law unfair competition, contributory trademark infringement, tortious interference with business relationships and prospective advantage, unjust enrichment, and violations of the Computer Fraud and Abuse Act, among other things.

72.     Defendant knowingly agreed to engage, and did engage, in one or more overt acts in pursuit of the conspiracy as set forth with more particularity in this Complaint.

73.     Sprint has been proximately damaged by the conspiracy and Defendant's actions in furtherance thereof.

74.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's conspiracy.

## COUNT FOUR

## UNJUST ENRICHMENT

75.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

76.     By bulk purchasing the Sprint Phones at less than the manufacturer cost of the Phones for use on wireless networks other than Sprint's network, Defendant has obtained benefits from Sprint which have caused significant harm to Sprint and led to significant financial gain to Defendant through his resale of the bulk purchased Sprint Phones.

77.     Defendant has acquired the benefits voluntarily and with full knowledge of the benefits.

78.     Defendant has retained the benefits under such circumstances that make it unjust and inequitable for Defendant to retain the benefits without paying Sprint the value of the benefits Defendant acquired.

79.     There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's unjust enrichment.

## COUNT FIVE

## CONSPIRACY TO INDUCE BREACH OF CONTRACT

80.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

81.     Defendant solicits others ("Runners") to purchase Sprint Phones in bulk for the benefit of Defendant.

82.     Defendant's active solicitation of Runners includes contacting Runners and requesting that they obtain specific brands and models.

83.     Sprint had valid and existing contracts with Runners and other original purchasers of the Phones ("Purchasers").

84.     Defendant had knowledge of the contracts between Sprint and Purchasers, and intended to, and in fact did, induce Purchasers to breach their contracts with Sprint.

85.     The breaches of the contracts were proximately caused by Defendant's misconduct.

86.     Sprint suffered damages as a result.

## COUNT SIX

## COMMON LAW FRAUD

87.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

88.     As part of his Bulk Handset Trafficking Scheme, Defendant regularly and systematically misrepresents to Sprint that the Phones are being purchased for a legitimate purpose, that the Phones will be used by Defendant or other legitimate consumers on Sprint's wireless network, and that they will perform in accordance with the Terms and Conditions.

89.     When Defendant or his co-conspirators purchase Sprint Phones as part of their Bulk Handset Trafficking Scheme, they do not intend to use the Phones for a legitimate purpose or to activate them or maintain them as active on Sprint's wireless network, or otherwise perform in accordance with the Terms and Conditions.

90.     Defendant knows that he is required to activate for use the Sprint Phones on the Sprint wireless network, pay the monthly service charges, and otherwise comply with the Terms and Conditions.

91.    Defendant intended for Sprint to rely on their misrepresentations to allow Defendant to purchase and unlock the Phones for improper purposes.

92.    Sprint's reliance on Defendant's misrepresentations was reasonable under the circumstances.

93.    Sprint has been damaged and continues to suffer damages as a result of Defendant's actions.

94.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's fraud.

<u>**COUNT SEVEN**</u>

**FRAUDULENT MISREPRESENTATION**

95.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

96.    As part of their Scheme, Defendant regularly and systematically misrepresents to Sprint that the Phones are being purchased for a legitimate purpose and would be used by Defendant or other legitimate consumers on Sprint's wireless network.

97.    When Defendant or his co-conspirators purchase a Sprint Phone, they do not intend to use the Phone on the Sprint wireless network.

98.    Defendant knew that he was required to activate for use the Sprint Phones on the Sprint wireless network.

99.    Defendant intended for Sprint to rely on these misrepresentations to allow Defendant to acquire and unlock the Phones for improper purposes.

100.    Sprint's reliance on Defendant's misrepresentations was reasonable under the circumstances.

101.    Sprint has been damaged and continues to suffer damages as a result of Defendant's actions.

102.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's fraudulent misrepresentations.

## COUNT EIGHT

### TRAFFICKING IN COMPUTER PASSWORDS
### 18 U.S.C. § 1030(a)(6)

103.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

104.    The Sprint Phones that are trafficked by Defendant are loaded with confidential codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks"). In other words, the Phones act as a gateway to Sprint's protected computer networks. Sprint protects access to these protected computer networks through, among other things, the confidential codes contained in the Phones.

105.    Through their Bulk Handset Trafficking Scheme, Defendant is knowingly trafficking in the confidential codes contained in the Phones with the intent to defraud Sprint.

106.    Defendant's transfer of the Phones and confidential codes to others constitutes "trafficking" of the codes as defined in 18 U.S.C. § 1029 in that the codes were transferred, or otherwise disposed of, to others, or Defendant obtained control of the codes with intent to transfer or dispose of them.

107.    Defendant's trafficking of the Phones substantially affects interstate commerce and communication in that the codes contained in the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's protected computer networks are

used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

108.     Defendant's trafficking of Sprint's codes has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

109.     With respect to loss, Sprint has lost subsidy investments and spent well in excess of $5,000 responding to Defendant's contacts with Sprint customer service, investigating and assessing the possible impairment to the integrity of its protected computer networks, taking action to counteract Defendant's theft, and conducting a damage assessment regarding Defendant's collection and dissemination of Sprint Phones and codes, as well as tracking down fraudulently sold Phones.

110.     With respect to damage, by infiltrating the Sprint computer and telecommunications network and collecting and disseminating the illegally activated Phones and codes, Defendant has substantially impaired the integrity of Sprint's protected computer networks in an amount in excess of $5,000.  Moreover, Defendant's actions have deprived Sprint of the means to control the quality of its product and service.

111.     Defendant's activities constitute trafficking in computer passwords in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(6).

112.     Defendant's conduct is intentional, malicious and willful.

113.     Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above,  and because Defendant's conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause

(I): the loss to Sprint and its customers as a result of Defendant's conduct during any one year period aggregated at least $5,000 in value.

## COUNT NINE

**UNAUTHORIZED ACCESS**
**18 U.S.C. § 1030(a)(5)(C)**

114.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

115.     The Sprint post-paid Phones that are acquired by the Defendant from third-parties acting on his behalf in furtherance of the Bulk Handset Trafficking Scheme are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

116.     By illicitly acquiring and unlocking the Phones, Defendant necessarily accesses the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

117.     Defendant acquires and, in some circumstances, unlocks the Phones by misrepresenting to Sprint either directly or through a third-party agent that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.  Defendant uses fraud and misrepresentation to acquire the Phones from Sprint, and, as such, Defendant's access of Sprint's protected computer networks is not authorized in any way.

118.     Upon information and belief, when Defendant acquires a Sprint Phone from Runners/Mules acting on his behalf, Defendant carefully examines the Phone, turns it on, and performs various tests to confirm that the Phone he is purchasing is, in fact, active on Sprint's

wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct. This too constitutes unauthorized access of Sprint's protected computer networks via a password obtained through fraud and misrepresentation.

119. By trafficking in activated Sprint Phones, the Defendant is also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

120. Defendant's hacking of Sprint's protected computer systems allows him to improperly steal Sprint's subsidy investment in its Phones.

121. Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

122. Defendant's activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless communications services pursuant to licenses issued by the Federal Communications Commission.

123. Defendant's unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively -- substantially in excess of $5,000 over a one-year period.

124. With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendant's theft, and

conducting a damage assessment regarding Defendant's collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

125.    With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendant has substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000. Moreover, Defendant's actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

126.    Defendant's activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C).

127.    Defendant's conduct is intentional, malicious and willful.

128.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendant's conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendant's conduct during any one year period aggregated at least $5,000 in value.

## COUNT TEN

### UNAUTHORIZED ACCESS WITH INTENT TO DEFRAUD
### 18 U.S.C. § 1030(a)(4)

129.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

130.    The Sprint post-paid Phones that are acquired by the Defendant from third-parties acting on his behalf in furtherance of the Bulk Handset Trafficking Scheme are loaded with codes that access: (a) Sprint's national telecommunications computer network to make and

receive wireless voice calls and to transmit data, and (b) Sprint's computer billing network (collectively, the "protected computer networks").

131.    By purchasing the Phones, Defendant necessarily accesses the Sprint protected computer networks because the Phones are connected to those networks when purchased from Sprint.

132.    Defendant acquires and, in some circumstances, unlocks the Phones by misrepresenting to Sprint either directly or through a third-party agent that the Phones are being acquired and unlocked for a legitimate purpose for use by legitimate consumers on Sprint's computer networks, when in fact, they are not.  Defendant uses fraud and misrepresentation to acquire the Phones from Sprint, and, as such, Defendant's access of Sprint's protected computer networks is not authorized in any way.

133.    Upon information and belief, when Defendant acquires a Sprint Phone from Runners/Mules acting on his behalf, Defendant carefully examines the Phone, turns it on, and performs various tests to confirm that the Phone he are purchasing is, in fact, active on Sprint's wireless network and that the various electronic code numbers and access numbers loaded on the Phone are correct.  This too constitutes unauthorized access of Sprint's protected computer networks via a password obtained through fraud and misrepresentation.

134.    By trafficking in activated Sprint Phones, the Defendant is also knowingly, intentionally, and with the intent to defraud, facilitating the unauthorized access of Sprint's protected computer networks.

135.    Defendant's access of Sprint's protected computer systems allows him to improperly steal Sprint's subsidy investment in its Phones.

136.     Sprint's protected computer systems are "protected computers" as that term is defined in Section 1030(e)(2)(B) of the Computer Fraud and Abuse Act because they are used in interstate commerce and communications.

137.     Defendant's activities substantially affect interstate commerce and communication in that the Phones are trafficked over the internet, throughout the United States, and around the world, and Sprint's computer system and telecommunications network are used in and affect interstate commerce and communication, and provide wireless telecommunications service pursuant to licenses issued by the Federal Communications Commission.

138.     Defendant's unauthorized access of Sprint's protected computer systems has caused and will continue to cause Sprint to suffer injury, with "damages" and "losses" – as those terms are defined in Sections 1030(e)(8) and 1030(e)(11), respectively --  substantially in excess of $5,000 over a one-year period.

139.     With respect to loss, Sprint has lost subsidy investments in the trafficked Phones and spent well in excess of $5,000 investigating and assessing the possible impairment to the integrity of its protected computer systems, taking action to counteract Defendant's theft, and conducting a damage assessment regarding Defendant's collection and dissemination of Sprint Phones, as well as tracking down fraudulently sold Phones.

140.     With respect to damage, by infiltrating the Sprint computers systems and collecting and disseminating the illegally trafficked Phones, Defendant has substantially impaired the integrity of Sprint's systems in an amount in excess of $5,000.   Moreover, Defendant's actions have deprived Sprint of the means to control the quality of its product and service, and have stolen Sprint's subsidy investment in its Phones.

141.    Defendant's activities constitute unauthorized access in violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4).

142.    Defendant's conduct is intentional, fraudulent, malicious and willful.

143.    Pursuant to 18 U.S.C. § 1030(g), Sprint is entitled to maintain this civil action against Defendant to obtain compensatory damages and injunctive and other equitable relief because of the reasons identified above, and because Defendant's conduct involves at least one of the factors identified in 18 U.S.C § 1030(c)(4)(A)(i), including the factor set forth in subclause (I): the loss to Sprint and its customers as a result of Defendant's conduct during any one-year period aggregated is at least $5,000 in value.

## COUNT ELEVEN

### FEDERAL TRADEMARK INFRINGEMENT
### 15 U.S.C. § 1114 [§ 32(1) of the Lanham Act]

144.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

145.    Defendant's and/or his co-conspirators' aforementioned conduct constitutes use of certain federally registered Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

146.    Defendant's and/or his co-conspirators' use of certain federally registered Sprint Marks in connection with the sale of Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's infringing products, and the relationship between Sprint Communications and Defendant.

147.     Defendant's and/or his co-conspirators' unauthorized use of certain federally registered Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation and goodwill of Sprint Communications.

148.     Defendant's and/or his co-conspirators' use of certain federally registered Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a misappropriation of Sprint Communications' distinguishing and identifying federally registered trademarks that were created as a result of significant effort and expense by Sprint Communications over a long period of time.  Defendant's and/or his co-conspirators' use of certain federally registered Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant have some connection, association or affiliation with Sprint Communications, and is likely to mislead the trade and public into believing that Defendant's products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint Communications.

149.     Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage Sprint Communications and the reputation and goodwill of Sprint Communications, and has been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint Communications.  Sprint Communications is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

150.    Defendant's aforesaid acts constitute willful infringement of Sprint Communications' aforementioned federally registered trademarks in violation of 15 U.S.C. § 1114.

## COUNT TWELVE

**FEDERAL COMMON LAW TRADEMARK INFRINGEMENT
AND FALSE ADVERTISING
15 U.S.C. § 1125 (a)(1)(A) and (B) [§ 43(a) of the Lanham Act]**

151.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

152.    Defendant's and/or his co-conspirators' aforementioned conduct constitutes use of the Sprint Marks without authorization in connection with their conspiracy to sell and offer for sale unlocked, counterfeit Sprint Phones, which downstream customers will discover have been altered from their original state and do not include the warranties, accessories, manuals and related items that constitute part of the Sprint Phone package.

153.    Defendant's and/or his co-conspirators' use of the Sprint Marks in connection with the sale of unlocked, counterfeit Sprint Phones has caused, and will further cause, a likelihood of confusion, mistake and deception as to the source of origin of Defendant's counterfeit products, and the relationship between Sprint and Defendant.

154.    Defendant's and/or his co-conspirators' unauthorized use of the Sprint Marks is likely to continue in the future, all to the great and irreparable damage to the business, reputation, and goodwill of Sprint.

155.    Defendant's and/or his co-conspirators' use of the Sprint Marks in connection with the unlocked, counterfeit Sprint Phones, which do not include warranties, manuals, accessories and related items made part of the Sprint Phone package, constitutes a

misappropriation of the distinguishing and identifying Sprint Marks that was created as a result of significant effort and expense. Defendant's and/or his co-conspirators' use of the Sprint Marks evokes an immediate, favorable impression or association and constitutes a false representation that the products and business of Defendant have some connection, association or affiliation with Sprint, and thus constitutes false designation of origin and is likely to mislead the trade and public into believing that Defendant's products and services originate from, are affiliated with, or are sponsored, authorized, approved or sanctioned by Sprint.

156. Defendant, in committing the foregoing acts in commerce, has damaged, and will continue to damage Sprint and the reputation and goodwill of Sprint, and has been unjustly enriched and will continue to unjustly enrich themselves at the expense of Sprint. Sprint is without an adequate remedy at law to redress such acts, and will be irreparably damaged unless Defendant is enjoined from committing and continuing to commit such acts.

157. Defendant's use of the Sprint Marks in commercial advertising or promotion misrepresents the nature, characteristics, and/or qualities of his infringing products. Defendant's advertising and promotion is false or misleading. Defendant's advertising and promotion deceives has the capacity to deceive consumers. The deception and misrepresentations have a material effect on the purchasing decisions and affect interstate commerce.

158. Defendant's activities constitute false designation of origin, false descriptions and representations, and false advertising in commerce in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A) and (B).

159. Sprint is entitled to appropriate relief as prayed for hereinafter, including preliminary and permanent injunctive relief.

160.     Defendant knew or should have known that Plaintiffs are the owners and/or authorized licensees of the Sprint Marks and that Defendant had no legal right to use the Sprint Marks on his infringing products.  Defendant is engaged in and continues to engage in the alleged activities knowingly, willfully and deliberately, so as to justify the assessment of exemplary damages and an award of Plaintiffs' lost profits, Defendant's profits, and Plaintiffs' attorneys' fees.

## COUNT THIRTEEN

### CONTRIBUTORY TRADEMARK INFRINGEMENT

161.     Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

162.     By misappropriating and using at least one of the Sprint Marks in connection with the Bulk Handset Trafficking Scheme, Defendant knowingly aided and enabled distributors and/or sellers of his products to market them to members of the general public in a way that infringes at least one of the Sprint Marks by placing in the hands of distributors and/or sellers an instrument of consumer deception.

163.     Defendant's unlawful, unauthorized, and unlicensed sale of the unlocked Sprint Phones has contributed to the creation of express and implied misrepresentations that the Sprint Phones, as sold by Defendant, were created, authorized or approved by Sprint, and includes warranties.

164.     Upon information and belief, Defendant's conduct leads to post-sale confusion by causing consumers who purchase Sprint Phones altered by Defendant to believe that they are purchasing handsets approved by Sprint and containing original warranties.

165.    Defendant's conduct constitutes contributory infringement in violation of the Trademark Act.  Defendant's conduct is intentional, malicious and willful.

166.    Sprint has been damaged and continues to suffer damages as a result of Defendant's actions.

167.    There is no adequate remedy at law to fully compensate Sprint for the harm caused by Defendant's actions.

## COUNT FOURTEEN

### CONVERSION

168.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

169.    Defendant has and is engaged in acts of conversion in violation of the law of the State of Illinois.

170.    Sprint has the right to provide its Phones and wireless service to the public. Defendant has no such privilege or right.

171.    Defendant knew or should have known that he obtained the Phones through illegitimate means and had no legal right to advertise, use or resell them.

172.    Defendant is wrongfully interfering with Sprint's rights by engaging in the Bulk Handset Trafficking Scheme.

173.    Defendant intentionally and willfully exerted dominion and ownership over the Sprint Phones.

174.    Defendant's conversion of Sprint's property has caused and continues to cause Sprint to suffer irreparable injury, loss of reputation, and exemplary damages to be proved at

trial. Unless enjoined by this Court, Defendant will continue these acts, thereby causing Sprint further immediate and irreparable damage.

## COUNT FIFTEEN

### DECEPTIVE TRADE PRACTICES
### 815 ILCS 505 *et seq.*

175.    Sprint reasserts the allegations set forth in Paragraphs 1 through 48 above as though fully set forth herein.

176.    Defendant misrepresents to Sprint and the public that he is authorized to sell legitimate Sprint products.

177.    Defendant has used and is using the Sprint Marks in connection with the above-described Bulk Handset Trafficking Scheme in such a manner as to misrepresent the source, sponsorship, approval, and/or certification of their products and services, which are substantially similar to those offered by Sprint.

178.    The use of the Sprint Marks by Defendant creates an unreasonable risk that present and potential consumers may falsely conclude that there exists some affiliation, connection, or association between and among Sprint and Defendant, when none in fact exists.

179.    Defendant's acts have damaged, impaired, and diluted that part of Sprint's goodwill and good name symbolized by the Sprint Marks, which have developed great fame in the marketplace. The nature, probable tendency, and effect of Defendant's use of the Sprint Marks is to deceive the public.

180.    Defendant's use of the Sprint Marks in connection with his Bulk Handset Trafficking Scheme constitutes unfair competition as prohibited by the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

181.     Defendant had actual knowledge of Sprint's rights at the time he decided to use the Sprint Marks in connection with their Bulk Handset Trafficking Scheme.  Thus, Defendant willfully and deliberately infringed Sprint's trademark rights.

182.     Defendant's unfair business practices are of a recurring nature and harmful to the consumers and the public at large, as well as to Sprint.  These practices constitute unlawful, unfair, fraudulent, and deceptive business practices, and unfair, deceptive, untrue, and misleading advertising.

183.     As a result of Defendant's acts, Sprint has suffered and continues to suffer and incur irreparable injury, loss of reputation, and pecuniary damages to be proved at trial.  Unless enjoined by this court, Defendant will continue these acts, thereby causing Sprint further immediate and irreparable damage.

### DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

WHEREFORE, Plaintiffs, Sprint Solutions, Inc. and Sprint Communications Company L.P., respectfully request that this Court enter final judgment and permanent injunctive relief in favor of Plaintiffs and against Defendant, as follows:

(a) awarding Plaintiffs their compensatory, consequential, statutory and special damages including, without limitation, their lost profits, Defendant's profits, loss of goodwill and damage to its reputation, as well as exemplary damages, together with pre and post judgment interest, as provided by law;

(b) awarding Plaintiffs their reasonable attorneys' fees and costs associated with this action;

(c) granting permanent injunctive relief in favor of Plaintiffs and against Defendant enjoining Defendant from engaging in the unlawful practices described in this Complaint;

(d) requiring Defendant, pursuant to the Lanham Act, to deliver to Plaintiffs their entire inventory of phones and products bearing or infringing the Sprint Marks or a confusingly similar copy thereof; and

(e) granting such further relief as this Court deems just and proper.

This 4th day of April, 2014.

By: __/s/ Lawrence H. Heftman_____
Lawrence H. Heftman
Email:  lheftman@schiffhardin.com
Charles H.R. Peters
Email:  cpeters@schiffhardin.com
**SCHIFF HARDIN LLP**
233 South Wacker Drive, Suite 6600
Chicago, IL 60606
(312) 258-5500
(312) 258-5600 (fax)

James B. Baldinger (*to be admitted pro hac vice*)
Florida Bar No. 869899
Email:  jbaldinger@CFJBLaw.com
Stacey K. Sutton (*to be admitted pro hac vice*)
Florida Bar No. 0289530
Email: ssutton@CFJBLaw.com
**CARLTON FIELDS JORDEN BURT, P.A.**
525 Okeechobee Boulevard, Suite 1200
West Palm Beach, Florida  33401
(561) 659-7070
(561) 659-7368 (fax)

Gail E. Podolsky (*to be admitted pro hac vice*)
Georgia Bar No. 142021
Email: gpodolsky@CFJBLaw.com
**CARLTON FIELDS JORDEN BURT, P.A.**
One Atlantic Center

1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309
Phone: (404) 815-2714
Fax: (404) 815-3415

*Attorneys for Sprint Solutions, Inc. and*
*Sprint Communications Company L.P.*